IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| SIGMA LAMBDA UPSILON/ SEÑORITAS LATINAS UNIDAS SORORITY, INC., <br><br>Plaintiff, <br><br>v. <br><br>RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA, ET AL. <br><br>Defendants. | Case No.: 3:18-CV-00085 |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

Defendants Rector and Visitors of the University of Virginia ("UVA"), Frank M. Conner, III, Patricia Lampkin, J. Marshall Pattie, Edgar Halcott Turner, II, and Caroline Ott (collectively "Defendants"), by counsel and pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, file this Brief in Support of Motion for Protective Order. Defendants seek this Court's protection from certain topics of inquiry in Plaintiff Sigma Lambda Upsilon/Senoritas Latinas Unidas Sorority, Inc.'s ("SLU" or "Plaintiff") 30(b)(6) Deposition Notice (the "30(b)(6) Notice"). Certain topics of inquiry in the 30(b)(6) Notice are overly broad, unduly burdensome, seek irrelevant information, and are not proportional to the needs of this action. In support of its position, Defendants state as follows:

I.  **BACKGROUND**

   A.  **Procedural Posture.**

On September 17, 2018, SLU filed an action against the Rectors and Visitors of the University of Virginia pursuant to 42 U.S.C. § 1983 asserting two constitutional violations. (Dkt. No. 1, Compl.) On December 21, 2018, UVA filed a Motion to Dismiss for lack of

jurisdiction and Memorandum in Support. (Dkt. Nos. 5, 6.) In response, SLU filed a Motion to Amend Complaint, which this Court granted, allowing the First Amended Complaint to be filed on January 8, 2019. (Dkt. Nos. 7, 8, 9.) In the First Amended Complaint, Plaintiff dropped the constitutional claims against UVA while adding a claim pursuant to 20 U.S.C. § 1681 (Title IX). (Dkt. No. 9.) SLU further added five individual defendants, Frank M. Conner, III, Patricia Lampkin, J. Marshall Pattie, Halcott Turner, II, and Caroline Ott, all of whom are within the administration at UVA.[1] (*Id.*) Plaintiff asserts four counts against these individual defendants: two constitutional claims under 42 U.S.C. § 1983 for alleged violations of their right to First Amendment free speech and association and their Fourteenth Amendment right to equal protection, a claim under 42 U.S.C. § 1985(3) for conspiracy to deprive civil rights, and a claim under 42 U.S.C. § 1986 for neglect in not preventing Plaintiffs' civil rights from being violated. (*Id.*) Defendant UVA answered the First Amended Complaint in January 2019 and the individual defendants answered in July 2019. (Dkt. Nos. 10, 16-20.)

**B.     Factual Background.**

SLU is the national chapter of a historically Latina Sorority that operated a chapter on the campus of UVA ("SLU-UVA"). (Dkt. No. 9 at ¶ 5.) In February 2018, SLU-UVA was conducting a new member education program for prospective members of its sorority. (*Id.* ¶ 13.) On or about February 14, 2018, UVA received a report regarding one of the potential members experiencing distress with respect to the requirements of the SLU-UVA new member education program. (*Id.* at 23.) As the information learned potentially fell under UVA's anti-hazing policy,

---

[1] Plaintiffs also filed suit against "John and Jane Does 1-10." (Dkt. 9.) Plaintiffs have never identified any particular defendants, instead stating that they are "officers of the University of Virginia that have directly participated in the infringement of Plaintiff's rights." (*Id.* at ¶ 12.)

UVA began an investigation, during which time UVA suspended SLU-UVA's Fraternal Organization Agreement. (*Id.*)

As part of its investigation, UVA interviewed the potential new members, reviewed SLU-UVA's new member program, and met with SLU-UVA President Andrea Villena and Dean of Academics Leila Villacorta regarding the report from the student and the new member process. As a result of the investigation, UVA found SLU-UVA to be in violation of UVA's hazing policy and sent SLU-UVA a letter with the outcome of the investigation. To fully reinstate their Fraternal Organization Agreement, SLU's national organization was required to provide the Office of Fraternity and Sorority Life with a new member education plan that was compliant with University policies.

SLU worked with the Office of Fraternity and Sorority Life with respect to its new member education plan in the summer and fall of 2018. SLU filed a Complaint against UVA in September 2018 and subsequently an amended complaint in January 2019. A new member education plan was approved in February 2019 and SLU has been fully active since that time.

C. **The Plaintiff's 30(b)(6) Notice.**

On August 26, 2019, the plaintiff issued a 30(b)(6) deposition notice to Defendant UVA with eleven (11) topics listed for discussion. (Ex. 1, Notice of Dep.) On October 4, 2019, counsel for the parties met and conferred in good faith about Defendants' concerns with specific topics of inquiry listed in the 30(b)(6) Notice. Specifically, Defendants objected to topics 2, 5, 7, and 9 as the topics sought material outside of and not relevant to Plaintiff's claims. Counsel for the parties were unable to resolve all disputes. Defendants file this Motion for Protective Order with respect to the topics upon which an agreement was not reached.

3

## II. ARGUMENT

### A. Legal Standard and Relevant Law.

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets the boundaries of discoverable information in federal civil litigation. Parties are permitted "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," and discovery must be "proportional to the needs of the case…." Fed. R. Civ. P. 26(b)(1). In determining proportionality, the Court must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id*.

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, a party may seek a protective order from the court if it believes a discovery request is outside the permissible bounds of Rule 26(b)(1). The party moving for the entry of a protective order bears the burden to establish good cause exists for its entry. *United States ex rel. Davis v. Prince*, 753 F. Supp. 2d 561, 565 (E.D. Va. 2010). If the moving party establishes good cause exists for the entry of a protective order, the court may issue an order "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(D). Specifically, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *In re Thompson McMullan, P.C.*, No. 3:16-MC-1, 2016 U.S. Dist. LEXIS 35172, at *9 (E.D. Va. Mar. 17, 2016).

Notably, the "undue burden" category encompasses discovery requests that seek irrelevant information. *Singletary v. Sterling Transp. Co.*, 289 F.R.D. 237, 241 (E.D. Va. 2012). "Thus, if the discovery sought has no bearing on an issue of material fact—*i.e.*, if it is not

4

relevant—a protective order is proper." *Columbia Gas Transmission, LLC v. 252.071 Acres*, No. ELH-15-3462, 2016 U.S. Dist. LEXIS 169639, at *6 (D. Md. Dec. 8, 2016) (internal quotations omitted).

> **B.** **Plaintiff's Topics Seeking Information on Organizations Outside of the Greek System are Overly Broad, Unduly Burdensome, and Seek Irrelevant Information.**

Good cause exists for the entry of a protective order to protect UVA from certain overly broad, unduly burdensome, and irrelevant discovery requested in the 30(b)(6) Notice. Topic 9, which seeks "UVA's enforcement of hazing policies within the university men's sports teams," specifically seeks such information and Defendants seek a protective order with respect to it. Additionally, Defendants seek a protective order with respect to Topics 2, 5, and 7 to the extent they involve non-Greek Organizations.

Information or documents concerning non-Greek organizations, including but not limited to UVA's men's sports teams, are not relevant to the claims alleged by Plaintiff. Of Plaintiff's five claims, two involve claims of discrimination based on SLU's gender: an equal protection claim under Count 2 and a claim of discrimination as a violation of Title IX under Count 5. And these claims involve comparisons to "similarly situated" individuals. Non-Greek organizations, particularly the men's sports teams at UVA, are not similarly situated to SLU.

"The [Equal Protection] Clause requires that similarly-situated individuals be treated alike." *Smith v. United States Cong.*, No. 3:12-CV-45, 2015 U.S. Dist. LEXIS 27818, at *56-57 (E.D. Va. Mar. 6, 2015.) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)). To make out a claim under the Equal Protection Clause, a plaintiff must demonstrate that he or she has been treated differently from others similarly situated and that the unequal treatment was the result of intentional discrimination. *Id.* (citing *North v. Clarke*, No. 3:12-CV-45, 2011 U.S. Dist.

5

LEXIS 84917, at *6 (E.D. Va. Aug. 2, 2011); *see also*, *Equity in Ath., Inc. v. Dep't of Educ.*, 675 F. Supp. 2d 660 (W.D. Va. 2009) (stating that in an equal protection claim, a plaintiff must "demonstrate that he [or she] has been treated differently from others with whom he [or she] is similarly situated and that the unequal treatment was the result of *intentional or purposeful discrimination.*" (quoting *Williams v. Hansen*, 326 F.3d 569, 574 (4th Cir. 2003) (emphasis added in original)). Similarly, Plaintiff's Title IX discrimination claim requires a showing that similarly-situated groups were treated more favorably than SLU-UVA. *See, e.g.*, *Streno v. Shenandoah Univ.*, 278 F. Supp. 3d 924, 928-932 (W.D. Va. 2017).

The "similarly situated" requirement is a stringent one, on which a plaintiff bears the burden of proof. It "requires a plaintiff to identify persons materially identical to him or her who has received different treatment." *Kolbe v. Hogan*, 813 F.3d 160, 185 (4th Cir. 2016). "A plaintiff must produce evidence that shows an extremely high degree of similarity." *Cashion v. Jacklee*, No. 5:17-CV-00004, 2017 U.S. Dist. LEXIS 185749, at *8 (W.D. Va. Nov. 8, 2017) ((internal punctuation, citations omitted). SLU cannot meet this burden of showing that organizations outside the Greek system at UVA are "materially identical" to SLU.

SLU-UVA is a sorority that falls under the Multicultural Greek Council at UVA, which currently consists of seven Latin, Asian, multicultural and local fraternities and sororities.[2] Since 2001, the Office of Fraternity and Sorority Life within the Office of the Dean of Students at UVA has provided education and support to UVA's sororities and fraternities. And through the Office of Fraternity and Sorority Life, UVA's sororities and fraternities enter into a Fraternal

---

[2] The other Greek-lettered organizations at UVA fall under either the Inter-Fraternity Council (thirty-two fraternities), the Inter-Sorority Council (fifteen sororities), and the National Pan-Hellenic Council (seven historically Black Greek lettered organizations—three sororities and four fraternities).

6

Organization Agreement with UVA under which these organizations receive certain benefits from UVA, including a system of support and accountability. Notably, participation in any fraternity or sorority is voluntary. No one is required to join.

The men's sports teams at UVA, on the other hand, are part of the National Collegiate Athletic Association ("NCAA"), which regulates student-athletes. To be on a sports team, the NCAA has requirements a student must meet, including having a qualifying grade-point average, and has requirements with respect to continued participation in the sport while at UVA. Many student-athletes attend UVA on scholarship, for which maintaining a certain GPA and other requirements are mandated in order to maintain the scholarship. Finally, joining a sports team is a very competitive process and you must attend UVA to play on one of its sports teams.

The only potential comparator for Plaintiff's claims would be another Greek Organization,[3] which would be governed under a fraternity-council, supported through the Office of the Fraternity and Sorority Life, and have executed a Fraternal Organization Agreement. Plaintiff's discovery requests that encompass non-Greek organizations, particularly the men's sports teams, cannot lead to any admissible evidence. Plaintiff's requests for information and documents and requiring UVA to prepare for a deposition concerning the men's sports teams despite the obvious differences between SLU and UVA's men's sports teams are not made in good faith but instead to harass.

Finally, the UVA chapter of SLU began full operation again in the spring of 2019 with new member education protocol developed with the assistance and support of the Office of

---

[3] Defendants do not concede that the men's Greek organizations are "similarly situated" to SLU as to the causes of action alleged; however, Defendants accept that information concerning these organizations is discoverable.

Fraternity and Sorority Life. Considering these circumstances, requiring a 30(b)(6) deponent to prepare for and providing information regarding non-Greek organizations is unreasonable.

**III. CONCLUSION**

The plaintiff's 30(b)(6) Notice fails to meet the reasonable particularity requirement in Rule 30(b)(6). The 30(b)(6) Notice seeks irrelevant information and is not proportional to the needs of this case. Therefore, this Court should grant Defendants' Motion for Protective Order and limit the areas of inquiry set forth in the plaintiff's 30(b)(6) Notice and provide Defendants with any further relief it deems necessary.

Respectfully submitted,

**RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA, FRANK M. CONNER III, PATRICIA M. LAMPKIN, J. MARSHALL PATTIE, EDGAR HALCOTT TURNER, and CAROLINE OTT**

By  /s/ Sandra S. Gregor/s/
Sandra S. Gregor (VSB No. 47421)
Assistant Attorney General
Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
(804) 786-1586 Telephone
(804) 371-2087 Facsimile
sgregor@oag.state.va.us

Sheri H. Kelly (VSB No. 82219)
Assistant Attorney General
Office of the Attorney General
204 Abingdon Place
Abingdon, Virginia 24211
(276) 628-2964 Telephone
(276) 628-4375 Facsimile
skelly@oag.state.va.us

8

Barry T. Meek, Esq. (VSB No. 41715)
Associate University Counsel and
Senior Assistant Attorney General
University of Virginia
Office of University Counsel
Madison Hall
1827 University Avenue
Charlottesville, Virginia 22903
(434) 924-3586 Telephone
(434) 982-3070 Facsimile
bmeek@virginia.edu
*Counsel for Defendants Rector and Visitors of the University of Virginia, Frank M. Conner III, Patricia M. Lampkin, J. Marshall Pattie, Edgar Halcott Turner II, and Caroline Ott*

# CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of October 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record for the plaintiff.

By /s/ Sandra S. Gregor/s/
Sandra S. Gregor (VSB No. 47421)
Assistant Attorney General
Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
(804) 786-1586 Telephone
(804) 371-2087 Facsimile
sgregor@oag.state.va.us
*Counsel for Defendants Rector and Visitors of the University of Virginia, Frank M. Conner III, Patricia M. Lampkin, J. Marshall Pattie, Edgar Halcott Turner II, and Caroline Ott*