IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| SIGMA LAMBDA UPSILON/SEÑORITAS LATINAS UNIDAS SORORITY, INC., | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 3:18CV00085 |
| v. | ) ) ) | **MEMORANDUM OPINION** |
| RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA, et al., | ) ) ) | By: Hon. Glen E. Conrad Senior United States District Judge |
| Defendants. | ) ) | |

Sigma Lambda Upsilon/Señoritas Latinas Unidas Sorority, Inc. ("SLU") filed this action against the Rector and Visitors of the University of Virginia ("UVA"), five named officers or employees of UVA,[1] and ten unnamed officers of UVA,[2] asserting claims under 42 U.S.C. §§ 1983, 1985, and 1986, and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.  The case is presently before the court on the motion to dismiss filed by UVA and the named individual defendants.  For the reasons stated, the court will grant the motion to dismiss.[3]

## Background

The following facts are taken from the second amended complaint and documents cited therein.  See Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999) (noting that "a court may consider [a document attached to a motion to dismiss] in determining whether to dismiss the

---

[1] The individuals named as defendants are Frank M. Conner, III, the Rector of UVA; Patricia M. Lampkin, the Vice President and Chief Student Affairs Officer;  J. Marshall Pattie, the Associate Dean of Students; Edgar Halcott Turner, II, the Assistant Dean of Fraternity and Sorority Life; and Caroline Ott, the Program Coordinator of Fraternity and Sorority Life.

[2] SLU refers to the unidentified officers as "John and Jane Does 1-10."  2d Am. Compl. ¶ 12, ECF No. 36.

[3] Several discovery motions remain pending.  Those motions will be dismissed as moot.

complaint" if the document is "integral to and explicitly relied on in the complaint" and there is no authenticity challenge).

SLU is a not-for-profit corporation that operates as a Latina-based sorority.  2d Am. Compl. ¶ 5, ECF No. 36.  SLU has chapters at over 50 colleges and universities, including UVA.  Id.  One of its "core associative goals is to develop academically successful members who will develop into public and private leaders."  Id. ¶ 21.

In early 2018, SLU took part in the "rushing" process at UVA, during which it recruited female students ("Hermanas") to join SLU.  Id. ¶ 13.  "One of SLU's core requirements for rushing is that Hermanas adhere to SLU's policies governing conduct for its members."  Id. ¶ 16.  "As relevant here, one such policy is that students study for academic courses for at least 25 hours per week."  Id. ¶ 17.  SLU alleges that this policy furthers its core associative goal of developing academically successful members.  Id. ¶ 20.

On February 14, 2018, UVA officials began investigating SLU for hazing after "an Hermana allegedly complained to a UVA educator about the burdens of being a new UVA student and pledging for a sorority."  Id. ¶ 22–23.  Hazing "is prohibited by University policy and the University Standards of Conduct."  Record Policy 2017-2018 at 1, Mot. Dismiss Ex. 1, ECF No. 39-1.  UVA defines "hazing" as follows:

> [A]ny action taken or situated created by a member or members of a student organization toward one or more organization members or prospective members in connection with initiation, admission, affiliation, or ongoing membership in the organization when the action or situation:
>
> A.  Occurs on University-owned or leased property or at University-sponsored or supervised functions or at the local residence of any University student, faculty member, or employee, and

> B.  Is designed to produce or does produce mental or physical
> harassment, humiliation, fatigue, degradation, ridicule, shock or
> injury.

Id.

The hazing investigation included interviews of several Hermanas.  2d Am. Compl. ¶ 30. Although the investigation allegedly uncovered "no evidence of any physical [or mental] harm done to any Hermana by SLU," the defendants issued an "Outcome Letter" finding SLU responsible for violating the hazing policy.  Id. ¶¶ 33, 50–51.  SLU maintains that the defendants based the hazing finding on the sorority's 25-hour weekly study requirement and their evaluation of the perceived credibility of the Hermanas interviewed during the investigation.  Id. ¶¶ 36, 40; see also Outcome Letter at 2, Mot. Dismiss Ex. 2, ECF No. 39-2 ("All new members expressed emotional stress as a result of struggling to meet the time demands of the SLU new member process . . . . Based on the evidence obtained from written statements, and an evaluation of the perceived credibility of the relevant Sigma Lambda Upsilon witnesses, the investigators do find Sigma Lambda Upsilon responsible for violating the University's hazing policy.").

As a result of the hazing investigation, the defendants suspended SLU on March 1, 2018. 2d Am. Compl. ¶ 59; Outcome Letter at 2.  The suspension has since been lifted, and SLU has been allowed to resume activities on campus.  2d Am. Compl. ¶ 62.  In order to be reinstated, SLU agreed—allegedly "under duress"—to modify its new member education program and eliminate the 25-hour weekly study requirement.  Id.  SLU remains free to recommend that new members devote 25 hours per week to academic study time.  See Articles of the New Member Education Program at 1, Mot. Dismiss Ex. 3, ECF No. 39-3.  Nonetheless, SLU seeks to reinstate the mandatory hourly requirement.  2d Am. Compl. ¶ 63.

In the instant action, SLU maintains that the defendants' enforcement of the hazing policy was discriminatory, pointing to activities permitted by UVA.  For example, SLU notes that "UVA's top-grossing men['s] sport programs, including men's football and basketball, often require time commitments of their students in excess of 25 hours per week" and that "certain courses and academic programs offered at UVA require more than 25 hours of study per week to complete the courses and academic programs satisfactorily."  Id. ¶¶ 44, 47.  SLU alleges, on information and belief, that "UVA has never made a hazing finding against its profit-generating sports programs" despite the harms suffered by student athletes.  Id. ¶ 58.  SLU further alleges, on information and belief, that the defendants have "allowed non-female fraternal organizations to continue operating even when more serious (i.e. actual) hazing incidents occurred."  Id. ¶ 68.

## Procedural History

SLU filed the instant action on September 17, 2018, naming UVA as the sole defendant.  UVA responded with a motion to dismiss.  SLU then moved to amend the complaint within the time permitted by Federal Rule of Civil Procedure 15(a)(1)(B).  The court granted the motion to amend on January 8, 2019.  The first amended complaint, which was deemed filed as of that date, added five named individual defendants, ten John and Jane Doe defendants, and three new counts.

 Thereafter, the parties engaged in discovery and filed various discovery motions.  During a telephonic hearing on the discovery motions, "the parties represented to the court that the nature of the parties' dispute had changed."  Nov. 19, 2019 Order at 1, ECF No. 34.  The parties informed the court that UVA had lifted SLU's suspension during the course of the litigation, subject to conditions, and that SLU "objects to certain of those conditions, alleging that they violate [its] rights."  Id.  In light of the parties' representations, the court entered an order taking the discovery motions under advisement and directing SLU to file an amended complaint.

On December 6, 2019, SLU filed a second amended complaint against the same defendants, which contains five counts. The first two counts are federal constitutional claims brought pursuant to 42 U.S.C. § 1983. In Count 1, SLU claims that the defendants violated, and continue to violate, its First Amendment rights to free speech and expressive association by suspending SLU for hazing and then conditioning its reinstatement on the elimination of the 25-hour weekly study requirement. In Count 2, SLU claims that the defendants violated its right to equal protection under the Fourteenth Amendment "[b]y suspending SLU and not other similarly-situated fraternal and male exclusive organizations." 2d Am. Compl. ¶ 80. In Counts 3 and 4, SLU claims that the defendants conspired to violate its civil rights and neglected to prevent such conspiracy, in violation of 42 U.S.C. §§ 1985(3) and 1986. In Count 5, SLU asserts a claim for sex-based discrimination in violation of Title IX. SLU seeks declaratory and injunctive relief, monetary damages, and attorneys' fees and costs.

UVA and the named individual defendants have moved to dismiss the second amended complaint under Rules 12(b)(1) and 12(b)(6) of Federal Rules of Civil Procedure. The motion to dismiss has been fully briefed and argued and is now ripe for disposition.

## Standard of Review

Rule 12(b)(1) permits defendants to move for dismissal for lack of subject matter jurisdiction. In this case, the jurisdictional challenge is based on the doctrine of sovereign immunity under the Eleventh Amendment. See Cunningham v. Gen. Dynamics Info. Tech., Inc., 888 F.3d 640, 649 (4th Cir. 2018) (holding that sovereign immunity is a jurisdictional bar). The burden of proving entitlement to sovereign immunity rests with the entity or individual seeking immunity. Hutto v. S.C. Ret. Sys., 773 F.3d 536, 543 (4th Cir. 2014). Dismissal under Rule 12(b)(1) is appropriate "if the material jurisdictional facts are not in dispute and the moving party

is entitled to prevail as a matter of law." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).

Rule 12(b)(6) permits a defendant to move for dismissal of a complaint for failure to state a claim upon which relief can be granted. When deciding a motion to dismiss under this rule, the court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in the plaintiff's favor. Erickson v. Pardus, 551 U.S. 89, 94 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

"Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996). One such defense is qualified immunity. Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011) (citing Jenkins v. Medford, 119 F.3d 1156, 1159 (4th Cir. 1997) (en banc)).

**Discussion**

## I.    Civil Rights Claims

The court will first address SLU's civil rights claims under 42 U.S.C. §§ 1983, 1985, and 1986. Although it is not entirely clear from the second amended complaint, SLU appears to seek

damages, injunctive relief, and declaratory relief against UVA and the individual defendants, in both their official and personal capacities, for alleged violations of the First Amendment and the Fourteenth Amendment's Equal Protection Clause.

"Section 1983 . . . is not an independent source of substantive rights, but simply a vehicle for vindicating preexisting constitutional and statutory rights." Safar v. Tingle, 859 F.3d 241, 245 (4th Cir. 2017) (citing Graham v. Connor, 490 U.S. 386, 393–94 (1989)).  The statute imposes civil liability any person who, acting under color of state law, deprives another person of rights and privileges secured by the Constitution and laws of the United States.  42 U.S.C. § 1983. Section 1985, in turn, "authorizes a remedy against state actors who have conspired to deprive an individual of [her] civil rights, see 42 U.S.C. § 1985, and section 1986 provides a remedy against state actors who have failed to prevent a conspiracy actionable under section 1985, see id. § 1986." Dixit v. Singh, 758 F. App'x 766, 768 (11th Cir. 2018).

### A.   UVA

To the extent that SLU seeks relief against UVA under §§ 1983, 1985, and 1986, the claims are barred by the Eleventh Amendment.  Under the Eleventh Amendment, "an unconsenting State is immune from suit brought in federal court by her own citizens as well as by citizens of another State." Edelman v. Jordan, 415 U.S. 651, 662–63 (1974).  This protection also extends to state agencies and instrumentalities, Regents of Univ. of Cal. v. Doe, 519 U.S. 425, 429 (1997), including UVA.  See Tigrett v. Rector & Visitors of the Univ. of Va., 97 F. Supp. 2d 752, 746 (W.D. Va. 2000) (Moon, J.) ("This Court has already held that the Rector and Visitors of the University, as an instrumentality of the state, is immune from suit in federal court.") (citations omitted).  Therefore, absent waiver or abrogation of sovereign immunity, any claims against UVA "are barred regardless of the relief sought." P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy,

Inc., 506 U.S. 139, 146 (1993); see also McCray v. Md. Dep't of Transp., 741 F.3d 480, 483 (4th Cir. 2014) "[A]bsent abrogation of sovereign immunity or consent from Maryland, McCray cannot seek injunctive or monetary relief from [either state agency].").

In this case, sovereign immunity has not been waived by the Commonwealth of Virginia. Nor has it been abrogated with respect to the civil rights claims asserted in Counts 1 through 4. "While Congress may abrogate a State's Eleventh Amendment immunity by express statutory language, it has long been settled that 42 U.S.C. § 1983 . . . does not effect such an abrogation." In re Sec'y of Dep't of Crime Control & Pub. Safety, 7 F.3d 1140, 1149 (4th Cir. 1993) (citation omitted). The same is true for §§ 1985 and 1986. See Early v. S. Univ & Agric. & Mech. College Bd. of Supervisors, 252 F. App'x 698, 700 (5th Cir. 2007); Fincher v. Fla. Dep't of Labor & Emp't Sec., 798 F.2d 1371, 1372 (11th Cir. 1986). Consequently, the civil rights claims against UVA are jurisdictionally barred by the Eleventh Amendment and will be dismissed without prejudice. See Tang v. Univ. of Balt., 782 F. App'x 254, 255 (4th Cir. 2019) ("[A] dismissal based upon Eleventh Amendment immunity would be without prejudice.").

### B.   Individual Defendants

#### 1.   Claims for Damages

The court turns now to SLU's civil rights claims against the individual defendants. To the extent that the individual defendants are sued in their official capacities, SLU's claims for damages under §§ 1983, 1985, and 1986 are jurisdictionally barred by the Eleventh Amendment. See Ballenger v. Owens, 352 F.3d 842, 845 (4th Cir. 2003) ("[F]or purposes of the Eleventh Amendment, a state official acting in his official capacity is protected from a damages action by the same immunity."). To the extent that the individual defendants are sued in their personal

capacities, the court concludes, for the following reasons, that the claims for damages are subject to dismissal under Rule 12(b)(6).[4]

### a.     Section 1983 and Qualified Immunity

"To state a claim under § 1983, a plaintiff must aver that a person acting under color of state law deprived him of a constitutional right or a right conferred by a law of the United States." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 (4th Cir. 2019).  The Supreme Court has held that "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983" and are not immune from liability under the Eleventh Amendment.  Hafer v. Melo, 502 U.S. 21, 31 (1991).  They may, however, be protected from liability under the doctrine of qualified immunity.  Id. at 25 ("[O]fficials sued in their personal capacities  . . . may assert personal immunity defenses . . . .").

The doctrine of qualified immunity shields government officials from civil damages liability "so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mullenix v. Luna, 577 U.S. 7, 11 (2015) (per curium) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)).  "To determine whether a complaint should survive a qualified-immunity based motion to dismiss, [courts] exercise 'sound discretion' in following the two-prong inquiry set forth by the Supreme Court . . . ." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020).  Under the first prong, the court considers whether the facts alleged by the plaintiff establish that the defendants violated a constitutional right. Meyers v. Balt. Cnty., 713 F.3d 723, 731 (4th Cir. 2013) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)).  Under

---

[4] As indicated above, there are ten individual defendants who have not been identified or served and, therefore, have not joined in the pending motion to dismiss.  However, the same reasons that the claims are subject to dismissal as to the named individual defendants also apply to the John and Jane Doe defendants.  Accordingly, any attempt to amend the complaint by replacing the John and Jane Doe defendants with named officers of the University would be futile, and the court finds it appropriate to dismiss the claims against all of the individual defendants for the reasons discussed herein.

the second prong, the court determines "whether the right at issue was 'clearly established' at the time of the [defendants'] conduct." Id. (quoting Saucier, 533 U.S. at 201). Officials are entitled to qualified immunity if either prong is not satisfied by the plaintiff. Pearson, 555 U.S. at 244–45; see also Cybernet, LLC v. David, 954 F.3d 162, 169 (4th Cir. 2020) ("Specifically, to defeat a qualified immunity defense, a plaintiff must show that '(1) the defendant violated the plaintiff's constitutional rights, and (2) the right in question was clearly established at the time of the alleged violation.'") (quoting Adams v. Ferguson, 884 F.3d 219, 226 (4th Cir. 2018)).

### i.    First Amendment

In Count 1, SLU claims that the individual defendants violated its First Amendment rights to free speech and expressive association by suspending SLU as a result of the hazing investigation.[5]  SLU further asserts that the individual defendants have continued to violate its First Amendment rights by "allow[ing] SLU to resume activities on campus, but only on the condition that it agree to eliminating the 25 hour per week study requirement." 2d Am. Compl. ¶ 61.  For the following reasons, the court concludes that the facts alleged by SLU do not establish a First Amendment violation and that the individual defendants are entitled to qualified immunity.

In assessing SLU's First Amendment claims, the court "must first identify the nature of the forum at issue." Sons of Confederate Veterans v. City of Lexington, 722 F.3d 224, 229 (4th Cir. 2013); see also Capitol Square Review & Advisory Bd. v. Pinette, 515 U.S. 753, 761 (1995) (observing that the right to use property for private expression depends on the nature of the property). The Supreme Court has explained that "governmental entities establish limited public

---

[5] In addition to protecting speech, "[t]he First Amendment protects two types of association: intimate association and expressive association." Iota Xi Chapter of Sigma Chi Fraternity v. Patterson, 566 F.3d 138, 146 (4th Cir. 2009) (citing Roberts v. U.S. Jaycees, 468 U.S. 609, 617–18 (1984)).  To be protected by the right to expressive association, "a group must engage in some form of expression, whether it be public or private. Boy Scouts of Am. v. Dale, 530 U.S. 640, 648 (2000).  In this case, the moving defendants do not dispute that SLU engages in expressive association for purposes of the First Amendment.

forums by opening property 'limited to use by certain groups or dedicated solely to the discussion

of certain subjects.'" Christian Legal Soc'y Chapter of the Univ. of Cal. v. Martinez, 561 U.S.

661, 679 n.11 (2010) (quoting Pleasant Grove City v. Summum, 555 U.S. 460, 470 (2009)).  SLU

does not contest that UVA has created a limited public forum by permitting certain sororities,

fraternities, and other organizations to operate on its campus.  Accordingly, SLU's First

Amendment claims are properly analyzed under the limited-public-forum framework.  See id. at

683 ("[W]e are persuaded that our limited-public-forum precedents adequately respect both [the

organization's] speech and expressive-association rights, and fairly balance those rights against

[the university's] interests as property owner and educational institution."); see also Young

America's Found. v. Kaler, 370 F. Supp. 3d 967, 984 (D. Minn. 2019) ("[V]irtually every recent

case involving a First Amendment speech challenge to a university policy, regulation, or action

has been analyzed under the 'limited public forum' framework.") (citations omitted).

In a limited public forum, restrictions on speech must be "reasonable in light of the purpose

served by the forum" and must not "discriminate against speech on the basis of its viewpoint."

Rosenberger v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 829 (1995) (internal quotation

marks and citations omitted).  In other words, "[a]ny restrictions made on expressive activity in a

limited public forum only must be reasonable and viewpoint neutral."  Bloedorn v. Grube, 631

F.3d 1218, 1231 (11th Cir. 2011).  Applying this standard, the court concludes that the second

amended complaint fails to state a viable First Amendment claim.

With respect to SLU's suspension following the hazing investigation, the facts alleged by

SLU do not establish that the hazing policy, or the defendants' enforcement thereof, was

unreasonable.  Reasonableness in this context "must be assessed in the light of the purpose of the

forum and all the surrounding circumstances."  Cornelius v. NAACP Legal Def. & Educ. Fund,

11

Inc., 473 U.S. 788, 809 (1985).  "In other words, 'consideration of a forum's special attributes is relevant to the constitutionality of a regulation since the significance of the governmental interest must be assessed in the light of the characteristic nature and function of the particular forum involved.'" Goulart v. Meadows, 345 F.3d 239, 255 (4th Cir. 2003) (quoting Heffron v. Int'l Soc'y for Krishna Consciousness, Inc., 452 U.S. 640, 650–51 (1981)) (alteration omitted).  Moreover, a restriction "need only be reasonable; it need not be the most reasonable or the only reasonable limitation." Cornelius, 473 U.S. at 808 (emphasis in original).

In the particular setting at issue here, the Supreme Court has recognized that "[a] university's mission is education" and that its decisions "have never denied a university's authority to impose reasonable regulations compatible with that mission upon the use of its campus and facilities." Widmar v. Vincent, 454 U.S. 263, 268 n.5 (1981).  The Court has further emphasized that universities "enjoy a significant measure of authority over the type of officially recognized activities in which their students participate," Martinez, 561 U.S. at 686–87 (internal quotation marks and citation omitted), and that they have "comprehensive authority . . . , consistent with fundamental constitutional safeguards, to prescribe and control conduct" on their campuses, Healy v. James, 408 U.S. 169, 180 (1972) (internal quotation marks and citation omitted).

Against this backdrop, the second amended complaint provides no basis on which to conclude that UVA's hazing policy is unreasonable or that the defendants enforced the policy against SLU in an unreasonable manner.  As indicated above, the policy is designed to protect members or prospective members of student organizations from actions or situations that may result in mental or physical harassment, fatigue, or injury.  SLU was investigated for hazing after an Hermana reportedly "complained to a UVA educator about the burdens of being a new UVA student and pledging for a sorority," and the defendants ultimately suspended SLU as a result of

the investigation.  2d Am. Compl. ¶¶ 24, 59.  Despite having two opportunities to amend its complaint, SLU has not been able to allege any facts that would indicate that such decision or action by university officials was so unreasonable that it constituted a violation of SLU's First Amendment rights.  See Bowman v. White, 444 F.3d 967, 980 (8th Cir. 2006) (recognizing that a university has a "significant interest" in "protecting the educational experience" of its students); see also Martinez, 561 U.S. at 691 (rejecting the notion that "nonrecognition of a student organization is equivalent to prohibiting its members from speaking" and noting that "[p]rivate groups, from fraternities and sororities to social clubs and secret societies, commonly maintain a presence at universities without official school affiliation").

The same is true for SLU's attempt to allege a continuing violation by asserting that the defendants conditioned its reinstatement as a student organization on the elimination of the 25-hour weekly study requirement.  SLU does not suggest that it is prohibited from extolling the importance of studying or from recommending that members study at least 25 hours per week. Instead, SLU takes issue with the fact that it cannot force or require members to do so as a result of the hazing investigation.  While SLU may wish to have more control over its members' time or activities, SLU has not shown that such a conduct-based restriction is so unreasonable that it violates the First Amendment.  See 2d Am. Compl. ¶¶ 16–17 (describing the study requirement as one of its "policies governing conduct for its members") (emphasis added); see also Healy, 408 U.S. at 180 (emphasizing that universities have broad authority to regulate conduct on their campuses).

SLU has also been unable to allege facts sufficient to establish that it is the victim of viewpoint discrimination.   Viewpoint discrimination is "an egregious form of content discrimination" that occurs "when the specific motivating ideology or the opinion or perspective

of the speaker is the rationale for the restriction."  Rosenberger, 515 U.S. at 829.  In other words, a restriction is not viewpoint neutral if it is "an effort to suppress expression merely because public officials oppose the speaker's view."  Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n, 460 U.S. 37, 46 (1983).  On the other hand, a policy or restriction that "draws no distinction between groups based on their message . . . is textbook viewpoint neutral," and "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others."  Martinez 561 U.S. at 694–95 (internal quotation marks and citation omitted) (alteration in original).

A review of UVA's hazing policy reveals that it is plainly viewpoint neutral.  The policy regulates conduct by members of a student organization and draws no distinction between organizations based on their particular message.  Although SLU claims that it was unfairly punished for allegedly violating the hazing policy, nothing in the second amended complaint indicates that the defendants targeted SLU because of its core belief that academic study is important or selectively enforced the policy because the defendants disagree with SLU's goals or message.  See Cent. Radio Co. v. City of Norfolk, 811 F.3d 625, 634–35 (4th Cir. 2016) (explaining that a selective enforcement claim under the First Amendment "requires a plaintiff to demonstrate that the government's enforcement process had a discriminatory effect and that it was motivated by a discriminatory purpose") (internal quotation marks and citation omitted).

For these reasons, the court concludes that the facts alleged in this case do not establish a violation of the First Amendment and that the individual defendants are therefore entitled to qualified immunity under the first prong of the qualified immunity analysis.  See Massey v. Ojaniit, 759 F.3d 343, 354 (4th Cir. 2014) (noting that qualified immunity applies under the first step of

14

the analysis when a plaintiff fails to state a claim on which relief can be granted, rendering it unnecessary to proceed to the second step).

Moreover, even if SLU could make out a First Amendment violation, the individual defendants would still be entitled to qualified immunity because SLU has not shown that the right at issue was "clearly established at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (internal quotation marks and citation omitted). The Supreme Court has explained that a constitutional right is clearly established where "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal quotation marks and citation omitted). "In other words, 'existing precedent must have placed the . . . constitutional question beyond debate.'" Reichle v. Howards, 566 U.S. 658, 664 (2012) (quoting al-Kidd, 563 U.S. at 741).

In response to the pending motion, SLU does not cite to any caselaw that would have put the individual defendants on notice that either of the challenged actions—suspending SLU for hazing or conditioning its reinstatement on the elimination of the 25-hour weekly study requirement—was clearly unlawful under the First Amendment. Accordingly, the court concludes that the individual defendants are also entitled to qualified immunity under the second prong of the analysis.

### ii.     <u>Fourteenth Amendment</u>

In Count 2, SLU claims that the individual defendants violated its rights under the Equal Protection Clause of the Fourteenth Amendment "[b]y suspending SLU and not other similarly-situated fraternal and male exclusive organizations." 2d Am. Compl. ¶ 80. For the following reasons, the court concludes that the facts alleged by SLU do not establish an equal protection violation and that the individual defendants are entitled to qualified immunity.

15

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "In order to survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that [it] was treated differently from others who were similarly situated <u>and</u> that the unequal treatment was the result of discriminatory animus." <u>Equity in Athletics, Inc. v. Dep't of Educ.</u>, 639 F.3d 91, 108 (4th Cir. 2011) (emphasis added). Here, SLU alleges that it was treated differently from male programs or groups at UVA, "including men's football and basketball" programs, which "often require time commitments of their students in excess of 25 hours per week." 2d Am. Compl. ¶ 44. Even assuming that SLU is similarly situated to these particular programs—an assumption that may not be wholly warranted—the facts alleged by SLU do not suggest that the difference in treatment "was the result of intentional or purposeful discrimination." <u>Morrison v. Garraghty</u>, 239 F.3d 648, 654 (4th Cir. 2001).

To satisfy the second element of an equal protection claim, a plaintiff is required to allege facts sufficient to show that the defendants "acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." <u>Wilson v. United States</u>, 332 F.R.D. 505, 525 (S.D.W. Va. 2019) (internal quotation marks and citation omitted). Thus, in this context, "discriminatory intent 'implies more than intent as volition or intent as awareness of consequences.'" <u>Sylvia Dev. Corp. v. Calvert County</u>, 48 F.3d 810, 819 n.2 (4th Cir. 1995) (quoting <u>Personnel Adm'r of Mass. v. Feeney</u>, 442 U.S. 256, 279 (1979)). Instead, the plaintiff must show that the defendants "selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." <u>Id.</u> (internal quotation marks and citation omitted); <u>see also</u> <u>Cent. Radio Co.</u>, 811 F.3d at 635 ("Thus, a plaintiff must show not only that similarly situated individuals were treated differently, but that there was

'clear and intentional discrimination.'"). As other courts have recognized, this is "no simple task." Villanueva v. City of Scottsbluff, 779 F.3d 507, 511 (8th Cir. 2015).

Despite having three opportunities to plead its claims, SLU has not been able to allege that the defendants intentionally discriminated against SLU on the basis of gender or any other protected characteristic. SLU maintains that the defendants "made [the hazing] finding despite being fully aware that other activities . . . at UVA require 'activity' programming in excess of 25 hours per week," and "despite similar or greater study requirements for male students in programs at groups at UVA, including NCAA scholarship athletes." 2d Am. Compl. ¶¶ 43–44 (emphasis added). However, nothing in the second amended complaint suggests that the defendants made the hazing finding or suspension decision because of sex or gender. See C & H Co. v. Richardson, 78 F. App'x 894, 902 (4th Cir. 2003) ("[A] plaintiff alleging an Equal Protection violation actionable under § 1983 must establish that the differential treatment it was afforded was intentional, not the result of mere negligence. The requisite intent in this context is more than simple awareness of the course of action being taken. As the Supreme Court has explained, 'discriminatory purpose . . . implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.'") (quoting Feeney, 442 U.S. at 279) (citations omitted); see also Nofsinger v. Virginia Commonwealth Univ., 523 F. App'x 204, 206 (4th Cir. 2013) (affirming the dismissal of an equal protection claim under Rule 12(b)(6) where the plaintiff asserted that the university "treated her differently from several similarly situated students" but "failed to establish that any differential treatment was the result of discrimination"). Accordingly, the court concludes that the facts alleged by SLU do not make out a violation of the Equal Protection Clause.

Based on this conclusion, it necessarily follows that qualified immunity applies under the first prong of the qualified immunity test.  However, the court also concludes that the individual defendants are entitled to qualified immunity under the second prong.  Succinctly stated, SLU has not shown that existing precedent at the time of the challenged decision placed "beyond debate" the question of whether the defendants violated the Equal Protection Clause by suspending SLU for hazing.  al-Kidd, 563 U.S. at 741.

### b.   Sections 1985 and 1986

In Counts 3 and 4, SLU asserts claims against the individual defendants under 42 U.S.C. §§ 1985 and 1986.  Section 1985 authorizes a cause of action if "two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ."  42 U.S.C. § 1985(3).  In order to state a claim under § 1985(3), a plaintiff must allege sufficient facts to establish the following elements:

> (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

Simmons v. Poe, 47 F.3d 1370, 1376 (4th Cir. 1995).

To survive a motion to dismiss, a plaintiff asserting a conspiracy claim under § 1985 must "plead specific facts in a nonconclusory fashion."  Gooden v. Howard Cnty., 954 F.2d 960, 970 (4th Cir. 1992).  SLU has not satisfied this requirement.  The second amended complaint does not set forth sufficient allegations to establish a joint plan or agreement to deprive SLU of its constitutionally protected rights.  Nor does it demonstrate that the individual defendants were motivated by a class-based discriminatory animus.  Accordingly, the § 1985 claim against the

individual defendants in their personal capacities is subject to dismissal under Rule 12(b)(6).[6]  See Francis v. Giacomelli, 588 F.3d 186, 196–97 (4th Cir. 2009) (affirming dismissal of a § 1985 claim where the plaintiffs failed to demonstrate "with specific facts that the defendants were motivated by a specific class-based, invidiously discriminatory animus to deprive the plaintiffs of the equal enjoyment of rights secured by the law . . .") (alterations omitted); Simmons, 47 F.3d at 1377 (emphasizing that the Court has "specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts").

The same is true for SLU's claim under 42 U.S.C. § 1986.  Section 1986 provides a cause of action against any party with knowledge of a § 1985 conspiracy who fails to attempt to prevent the conspiracy.  Thus, "[a] cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985."  Trerice v. Summons, 755 F.2d 1081, 1085 (4th Cir. 1985).  Having determined that the § 1985 claim is subject to dismissal, the court must also dismiss the § 1986 claim against the individual defendants in their personal capacities.  Id.

## 2.   Claims for Declaratory and Injunctive Relief

In addition to damages, SLU seeks prospective injunctive and declaratory relief for alleged violations of its constitutional rights.  Such claims against the individual defendants are not affected by the doctrine of qualified immunity or necessarily barred by the Eleventh Amendment. See Raub v. Campbell, 785 F.3d 876, 885 (4th Cir. 2015) (noting that a finding of qualified immunity extends only to an individual defendant's liability for damages); Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 496 (4th Cir. 2005) (explaining that "the

---

[6] Based on SLU's allegations, the court is of the opinion that the conspiracy claim is also barred by the intracorporate conspiracy doctrine, which recognizes that an entity cannot conspire with its agents.  Painter's Mill Grille, LLC v. Brown, 716 F.3d 342, 352 (4th Cir. 2013); see also Buschi v. Kirven, 775 F.2d 1240, 1251–53 (4th Cir. 1985) (applying the doctrine to a claim under § 1985).  "As such, suing the agents individually does not destroy 'the immunity granted under the doctrine.'"  Painter's Mill Grille, 716 F.3d at 353 (quoting Buschi, 775 F.2d at 1252).

Eleventh Amendment does not bar a suit against a State official for prospective relief") (citing Ex parte Young, 209 U.S. 123 (1908)).  Nonetheless, because the allegations in the second amended complaint do not establish a constitutional violation, much less an ongoing one, SLU is not entitled to declaratory or injunctive relief.  See, e.g., Bolin v. Story, 225 F.3d 1234, 1242 (11th Cir. 2000) ("In order to receive declaratory or injunctive relief, plaintiffs must establish that there was a violation, that there is a serious risk of continuing irreparable injury if the relief is not granted, and the absence of an adequate remedy at law."); Owen v. Liberty Univ., No. 6:19-cv-00007, 2020 U.S. Dist. LEXIS 64579, at *67 (W.D. Va. Apr. 13, 2020) (Moon, J.) ("Plaintiff is not entitled to the relief she requests under Count XXIX, even if the Court were to liberally construe it as a request for injunctive relief, because her complaint fails to state a claim on which relief can be granted . . . .").

## II.   Title IX Claim

In its final count, SLU claims that UVA violated Title IX by suspending SLU for hazing. Title IX provides, in pertinent part, that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  The Supreme Court has held that Title IX contains an implied private right of action that permits aggrieved parties to sue federally-funded educational institutions for alleged violations.  Cannon v. Univ. of Chi., 441 U.S. 677, 717 (1979).  By accepting federal funds, universities like UVA waive sovereign immunity under the Eleventh Amendment and consent to litigating Title IX claims in federal court.  Litman v. George Mason Univ., 186 F.3d 544, 555 (4th Cir. 1999); see also 42 U.S.C. § 2000d-7(a)(1).

Courts have recognized that "Title IX bars the imposition of university discipline where gender is a motivating factor in the decision to discipline." Yusuf v. Vassar Coll., 35 F.3d 709, 715 (2d Cir. 1994); see also Doe v. Rector & Visitors of George Mason Univ., 132 F. Supp. 3d 712, 732 (E.D. Va. 2015) ("At its core, plaintiff's intentional discrimination claim [under Title IX] is that his administrative proceeding resulted in an erroneous outcome as the result of gender-motivated discrimination by the presiding officials."). Citing Yusuf, the parties agree that a plaintiff can attempt to recover under Title IX in this context under either an erroneous outcome theory or a selective enforcement theory. See Defs.' Br. Supp. Mot. Dismiss at 24, ECF No. 39; Pl.'s Br. Opp'n Mot. Dismiss at 15, ECF No. 40. In response to the motion to dismiss, SLU emphasizes that its Title IX claim is based on the erroneous outcome theory. See Pl.'s Br. Opp'n Mot. Dismiss at 15 ("Here, SLU has alleged an erroneous outcome.").

A plaintiff seeking relief under the erroneous outcome theory must allege sufficient facts to establish: (1) that the plaintiff "was subjected to 'a procedurally flawed or otherwise flawed proceeding'; (2) which 'led to an adverse and erroneous outcome'; and (3) involved 'particular circumstances' that suggest 'gender bias was a motivating factor behind the erroneous finding.'" Doe v. Loh, 767 F. App'x 489, 491 (4th Cir. 2019) (per curium) (quoting Yusuf, 35 F.3d at 715). For the following reasons, the concludes that the allegations in the second amended complaint do not meet this standard.

To satisfy the first two elements, a plaintiff "must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding." Yusuf, 35 F.3d at 715. "For example, a complaint may allege particular evidentiary weaknesses behind the finding of an offense such as a motive to lie on the part of a complainant or witnesses, particularized strengths of the defense, or other reason to doubt the veracity of the charge," or a

complaint may "allege particular procedural flaws affecting the proof."  Id.  Here, SLU does not identify any procedural flaws in the proceedings leading to its suspension for hazing.  SLU instead asserts that the defendants "made their hazing finding despite finding no evidence of any physical [or mental] harm done to any Hermana by SLU."  2d Am. Compl. ¶¶ 50–51; see also Pl.'s Br. Opp'n Mot. Dismiss at 15.  Notably, however, SLU has not shown that UVA is required to find evidence of actual physical or emotional injury in order to hold a student organization responsible for hazing.  To the contrary, UVA's written policy defines hazing to include any action taken by members of a student organization that is "designed to produce or does produce mental or physical harassment, humiliation, fatigue, degradation, ridicule, shock, or injury."  Record Policy 2017-2018 at 1; see also id. at 2 (listing, as an example, actions or situations that deprive members or prospective members of adequate sleep or are likely to result in emotional distress).  While SLU may disagree with the policy or its application by the defendants, SLU has not been able to allege facts sufficient to establish that the challenged proceedings were flawed or that they resulted in an erroneous outcome.

SLU has also failed to allege, much less plausibly demonstrate, that "anti-[female] bias animated the proceedings, as necessary to prevail under either theory" of relief under Title IX. Doe v. Fairfax Cnty. Sch. Bd., No. 19-1702, 2020 U.S. App. LEXIS 33232, at *4 (4th Cir. Oct. 21, 2020).  Although SLU alleges, on information and belief, that fraternal organizations have been treated differently by UVA, such conclusory allegations are insufficient to survive a motion to dismiss.  See Owen v. Liberty Univ., 2020 U.S. Dist. LEXIS 64579, at *14 (concluding that the plaintiff failed to state a claim under Title IX where the plaintiff relied on speculation to support her claim and provided "no non-conclusory allegations in her complaint . . . to support the gender bias aspect of her erroneous outcome theory"); Streno v. Shenandoah Univ., 278 F. Supp. 3d 924,

931 (W.D. Va. 2017) (Dillon, J.) (holding that a conclusory assertion of differential treatment was insufficient to establish that the adverse outcome of the plaintiff's disciplinary proceeding was the result of sex-based discrimination); <u>Doe v. Rector & Visitors of George Mason Univ.</u>, 132 F. Supp. 3d at 733 (emphasizing that "in the absence of any specific factual allegations pointing to [a gender-motivated] bias on the part of the defendants, it cannot be said that the discriminatory motive explanation is plausible rather than just conceivable").

For these reasons, the court concludes that the second amended complaint fails to state a claim for relief under Title IX.  Accordingly, Count 5 will be dismissed under Rule 12(b)(6).

### <u>Conclusion</u>

For the reasons stated, the court will grant the motion to dismiss filed by UVA and the named individual defendants and dismiss the complaint in its entirety under Rules 12(b)(1) and 12(b)(6).

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This <u>30th</u> day of November, 2020.

_____
Senior United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| SIGMA LAMBDA UPSILON/SEÑORITAS LATINAS UNIDAS SORORITY, INC., | ) ) ) | |
|    Plaintiff, | ) ) | Civil Action No. 3:18CV00085 |
| v. | ) ) ) | **ORDER** |
| RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA, et al., | ) ) ) ) | By: Hon. Glen E. Conrad Senior United States District Judge |
|    Defendants. | ) | |

For the reasons stated in the accompanying memorandum opinion, it is hereby

**ORDERED**

as follows:

1.    The motion to dismiss, ECF No. 38, is **GRANTED**;

2.    The pending discovery motions, ECF Nos. 25, 27, & 30, are **DISMISSED AS MOOT**; and

3.    This action shall be **STRICKEN** from the court's active docket; and

The Clerk is directed to send copies of this order and the accompanying memorandum opinion to all counsel of record.

DATED: This 30th day of November, 2020.

_____
Senior United States District Judge